**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **ARNULFO BELLO GALINDO;** | § | |
| **FERNANDO DEL ANGEL AZUARA;** | § | |
| **ZENON DEL ANGEL GUERRERO;** | § | |
| **SAUL ESTEVEZ PACHECO; ISABEL** | § | |
| **GONZALEZ GONZALEZ; JOSE** | § | |
| **OSVALDO SANCHEZ CALDERON;** | § | |
| **and EZEQUIEL VAZQUEZ ORTEGA,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| | § | |
| **vs.** | § | **5:21-CV-963** |
| | § | |
| | § | |
| **PABLO FRANCISCO CANTU,** | § | |
| **individually and d/b/a Cantu** | § | **JURY TRIAL DEMANDED** |
| **Harvesting,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFFS' COMPLAINT**

## I.    INTRODUCTION

1.1      This case is about Defendant Pablo Francisco Cantu's chronic exploitation

of a group of agricultural guestworkers from Mexico. Between 2017 and 2021, Plaintiffs

and dozens of other Mexican nationals were lawfully admitted to the United States on

H-2A visas, primarily to harvest watermelons and pumpkins for Cantu throughout the State

of Texas. By importing H-2A workers, Cantu promised to accord them certain basic rights

and protections under federal law. Cantu broke those promises. Each year, Cantu

egregiously violated Plaintiffs' rights under the H-2A visa program. Among other

violations, Cantu placed Plaintiffs in a squalid, dilapidated labor camp, which was

eventually condemned by the U.S. Department of Labor. He failed to pay Plaintiffs at the

minimum hourly rate, and he failed to reimburse Plaintiffs for the significant out-of-pocket expenses that they incurred each year just to reach the United States.

1.2      Plaintiffs bring this suit seeking money damages, as well as declaratory and equitable relief. Plaintiffs additionally seek issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated Group Members—as defined herein—apprising them of the pendency of this action and of their right to join this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b).

## II.      JURISDICTION

2.1      This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. §§ 1331 & 1337.

2.2      This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds the sum of $75,000, Cantu is a citizen of the United States of America and the State of Texas, and Plaintiffs are citizens of Mexico.

2.3      This Court also has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the state claims are so related to the federal claims that they form part of the same case or controversy.

2.4      This Court has the power to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## III.      VENUE

3.1      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in or around Dilley, Texas, which is located in this district.

3.2     Alternatively, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(3) because Cantu is subject to the Court's personal jurisdiction.

## IV.     PARTIES

4.1     Each Plaintiff is a citizen of Mexico who was lawfully admitted to the United States on a temporary work visa pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(a), commonly referred to as an "H-2A visa," issued pursuant to the laws governing the "H-2A program."

4.2     No Plaintiff has been admitted for permanent residence in the United States.

4.3     In addition to seeking individual relief for themselves, Plaintiffs bring their Fair Labor Standards Act ("FLSA") claims as a collective action on behalf of a group of similarly situated workers; namely, all workers employed by Cantu and admitted into the United States pursuant to H-2A visas to perform agricultural work in Texas, in one or more of the following years: 2017, 2018, 2019, 2020, and 2021 (the "Group Members"). The Group Members may become parties to the lawsuit by filing a Notice of Consent to Participate, pursuant to 29 U.S.C. § 216(b).

4.4     Defendant Pablo Francisco Cantu, individually and d/b/a Cantu Harvesting (hereinafter, "Cantu"), is a natural person and a citizen of Hidalgo County, Texas.

4.5     Cantu does business as Cantu Harvesting, a sole proprietorship under Texas law with a principal place of business in Hidalgo County, Texas.

## V.     STATEMENT OF FACTS

### A.     Cantu's Participation in the Federal H-2A Visa Program

5.1     Cantu is a farm labor contractor, who supplies seasonal and temporary agricultural laborers to the owners and/or operators of produce farms and packing sheds

throughout the State of Texas. Cantu recruits, hires, employs, manages, supervises, houses, and transports said seasonal and temporary agricultural laborers.

5.2     An agricultural employer in the United States, including a farm labor contractor, may import foreign nationals to perform labor of a temporary nature, if the United States Department of Labor ("DOL") first certifies that: (1) there are insufficient available workers within the United States to perform the job; and (2) the employment of foreign nationals will not adversely affect the wages and working conditions of similarly situated U.S. workers. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a). Foreign nationals admitted in this fashion are commonly referred to as "H-2A workers."

5.3     Agricultural employers, including farm labor contractors, seeking the admission of H-2A workers, must first file a temporary employment certification application with the DOL. 20 C.F.R. §§ 655.130 & 655.132. This application must include a job offer, commonly referred to as a "clearance order" or "job order," that complies with applicable regulations and is used in the recruitment of both U.S. and H-2A workers. 20 C.F.R. § 655.121(a)–(c). The H-2A regulations establish the minimum benefits, wages, and working conditions that must be offered to avoid adversely affecting similarly situated U.S. workers. 20 C.F.R. §§ 655.0(a)(2), 655.122, 655.132 & 655.135.

5.4     One such requirement of the H-2A program is that—for every hour or portion thereof worked during a pay period—the employer must pay the workers the highest of the federal minimum wage, the state minimum wage, the adverse effect wage rate (AEWR), the agreed-upon collective bargaining wage, or the prevailing wage for the work in the geographic area where the work is to be performed. 20 C.F.R. §§ 655.120, 655.122(l).

a)  Effective December 23, 2016, the AEWR in Texas was $11.59 per hour. 81 Fed. Reg. 94422 (Dec. 23, 2016).

b)  Effective January 4, 2018, the AEWR in Texas was $11.87 per hour. 82 Fed. Reg. 60628 (Dec. 21, 2017).

c)  Effective January 9, 2019, the AEWR in Texas was $12.23 per hour. 83 Fed. Reg. 66306 (Dec. 26, 2018).

d)  Effective January 2, 2020, the AEWR in Texas was $12.67 per hour. 84 Fed. Reg. 69774 (Dec. 19, 2019).

e)  Effective February 23, 2021, the AEWR in Texas has been $13.03 per hour. 86 Fed. Reg. 10996 (Feb. 23, 2021).

5.5     A further requirement of the H-2A program is that, for those workers who complete the first 50 percent of the work contract, the employer must provide or pay for any transportation costs from the worker's home to the employer's jobsite which have not previously been reimbursed, as well as daily subsistence en route. 20 C.F.R. § 655.122(h)(1).

5.6     Furthermore, the H-2A program requires that, for those workers who complete the contract period or who are terminated without cause, the employer must provide or pay for transportation costs from the employer's jobsite to the worker's home, as well as subsistence en route. 20 C.F.R. § 655.122(h)(2).

5.7     Additionally, the H-2A program mandates that the employer must keep accurate and adequate records with respect to each worker's individual earnings, his daily starting and stopping times for work, and any deductions from his wages. 20 C.F.R. § 655.122(j).

5.8     Under the H-2A program, an employer must furnish each worker with individualized hours and earnings statements on or before each payday, containing, *inter alia*, the hours of work offered, the hours actually worked, and piece-work units produced daily by the employee during that pay period. 20 C.F.R. § 655.122(k).

5.9     The H-2A program also requires that the employer must provide each worker with housing, which meets the applicable health and safety standards, at no cost to the worker. 20 C.F.R. § 655.122(d).

5.10    Finally, the H-2A program obligates the employer to post and maintain in a conspicuous location at the place of employment, a poster setting out the rights and protections for H-2A workers. 20 C.F.R. § 655.135(l).

5.11    In 2017, 2018, 2019, 2020, and 2021, Cantu obtained H-2A visas from the United States government to import workers from Mexico. *See, e.g.*, Compl. Ex. A (H-2A Clearance Order H-300-21109-236023, effective 7/2/2021—10/31/2021); Compl. Ex. B (H-2A Clearance Order H-300-21033-049718, effective 4/15/2021—7/1/2021); Compl. Ex. C (H-2A Clearance Order H-300-20350-960897, effective 2/15/2021—4/14/2021); Compl. Ex. D (H-2A Clearance Order H-300-20112-505027, effective 7/2/2020—10/31/2020); Compl. Ex. E (H-2A Clearance Order H-300-20034-293356, effective 4/15/2020—7/1/2020).[1]

    a)     In 2021, Cantu obtained H-2A visas for Plaintiffs Arnulfo Bello Galindo, Fernando del Angel Azuara, Zenon del Angel Guerrero, Saul Estevez Pacheco, Isabel Gonzalez Gonzalez, Jose Osvaldo Sanchez Calderon, and Ezequiel Vazquez Ortega (the "2021

---

[1] Plaintiffs have submitted requests pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, for the Clearance Orders filed by Cantu from 2017 to 2019.

Plaintiffs"), as well as other similarly situated workers, who entered the United States pursuant to said visas, to perform agricultural labor for Cantu in Texas.

b)     In 2020, Cantu obtained H-2A visas for Plaintiffs Arnulfo Bello Galindo, Fernando del Angel Azuara, Zenon del Angel Guerrero, Saul Estevez Pacheco, Isabel Gonzalez Gonzalez, Jose Osvaldo Sanchez Calderon, and Ezequiel Vazquez Ortega (the "2020 Plaintiffs"), as well as other similarly situated workers, who entered the United States pursuant to said visas, to perform agricultural labor for Cantu in Texas.

c)     In 2019, Cantu obtained H-2A visas for Plaintiffs Arnulfo Bello Galindo, Fernando del Angel Azuara, Zenon del Angel Guerrero, Saul Estevez Pacheco, and Isabel Gonzalez Gonzalez (the "2019 Plaintiffs"), as well as other similarly situated workers, who entered the United States pursuant to said visas, to perform agricultural labor for Cantu in Texas.

d)     In 2018, Cantu obtained H-2A visas for Plaintiffs Fernando del Angel Azuara and Zenon del Angel Guerrero (the "2018 Plaintiffs"), as well as other similarly situated workers, who entered the United States pursuant to said visas, to perform agricultural labor for Cantu in Texas.

e)     In 2017, Cantu obtained H-2A visas for Plaintiffs Fernando del Angel Azuara, Zenon del Angel Guerrero, Saul Estevez Pacheco,

and Isabel Gonzalez Gonzalez (the "2017 Plaintiffs"), as well as other similarly situated workers, who entered the United States pursuant to said visas, to perform agricultural labor for Cantu in Texas.

5.12     In each year from 2017 to 2021, Cantu—in his capacity as a sole proprietor doing business as Cantu Harvesting—petitioned the DOL for issuance of each Plaintiff and Group Member's visa. Cantu signed the clearance orders himself. *See* Compl., Exs. A–E, at 8.

## B.     Plaintiffs' Status as Cantu's Employees

5.13     Cantu was Plaintiffs and Group Members' "employer" within the meaning of 29 U.S.C. § 203(d), Cantu "employed" Plaintiffs and Group Members within the meaning of 29 U.S.C. § 203(g), and Plaintiffs and Group Members were Cantu's "employees" within the meaning of 29 U.S.C. § 203(e)(1). Facts demonstrating that Cantu was Plaintiffs and Group Members' employer include the following:

a)     Cantu and his agents paid wages to Plaintiffs and Group Members[2];

b)     Cantu obtained H-2A visas from the United States government for Plaintiffs and Group Members;

c)     Cantu provided housing for Plaintiffs and Group Members for as long as they performed labor for Cantu in the United States;

d)     Cantu had and exercised the authority to hire and fire Plaintiffs and Group Members, including the authority to decide whether to seek

---

[2] Cantu paid Plaintiffs and Group Members some of their wages but failed to pay them all wages owed.

visas for Plaintiffs and Group Members to work in the United States each season;

e)   Plaintiffs and Group Members received instruction regarding how to perform their job duties from Cantu and his agents;

f)   Cantu and his agents transported Plaintiffs and Group Members between and among housing locations and worksites;

g)   Plaintiffs and Group Members performed harvesting and other manual labor activities of the type specified by Cantu and his agents, and at the locations and hours set by Cantu and his agents; and

h)   Cantu possessed and exercised the authority to control the employment rules and policies applicable to Plaintiffs and Group Members, including, but not limited to, setting the days, times, and places at which Plaintiffs and Group Members worked, the manner and means by which they were transported to and from work, and the manner in which Plaintiffs and Group Members were compensated.

5.14    Throughout their employment with Cantu, Plaintiffs and Group Members worked with goods and materials—including, but not limited to, produce, tools, and vehicles—that were moved in, or produced for, commerce.

5.15    Cantu has, in each season from 2017 to 2021, employed more than two individuals to support his farm labor contracting business. *See, e.g.*, Compl. Ex. A (petitioning for 80 H-2A workers). Therefore, Cantu's farm labor contracting operations

were, from 2017 to 2021, an enterprise employing more than two employees who handle and work with goods and materials that are moved in or produced for commerce.

5.16    Cantu's business operations' gross annual volume of sales made or business done was at least $500,000 from 2017 to 2021.

5.17    Thus, from 2017 to 2021, Cantu's farm labor contracting operations were an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(s)(1).

5.18    Therefore, from 2017 to 2021, Plaintiffs and Group Members were employed in an enterprise engaged in commerce within the meaning of 29 U.S.C. §§ 206(a) & 207(a).

5.19    Throughout their employment with Cantu, Plaintiffs and Group Members were engaged in the harvesting and production of produce, including pumpkins and watermelon, which were bought and sold in interstate commerce.

5.20    Thus, Plaintiffs and Group Members were engaged in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) & 207(a).

## C.    FLSA Collective Action – Proposed Group Members

5.21    Under the FLSA, employees may file a "collective action" on behalf of all similarly situated employees. 29 U.S.C. § 216(b).[3]

5.22    Plaintiffs bring this action on behalf of a group of similarly situated workers; namely, all workers employed by Cantu and admitted into the United States

---

[3] A collective action is not a Rule 23 class action, in which similarly situated persons are included in the class unless they "opt out." Rather, each similarly situated employee must "opt in" by filing a consent to be a party plaintiff.

pursuant to H-2A visas to perform agricultural work in Texas, in one or more of the following years: 2017, 2018, 2019, 2020, and 2021 ("Group Members").

5.23     Plaintiffs and Group Members are similarly situated because the acts and omissions leading Cantu to pay Plaintiffs less than the federally mandated minimum wage were also applied by Cantu to Group Members in the same manner.

5.24     The same policy or practice which resulted in the failure to the pay minimum wage to Plaintiffs, resulted in the failure to pay the minimum wage to the Group Members. Facts demonstrating Cantu's common application of this policy or practice include the following:

   a)     Plaintiffs and all Group Members were employed by Cantu;

   b)     Plaintiffs and all Group Members were supervised by Cantu and his agents;

   c)     Plaintiffs and all Group Members were paid some wages by Cantu and his agents;

   d)     Plaintiffs and all Group Members worked the same jobs, as agricultural laborers;

   e)     Plaintiffs and all Group Members were employed pursuant to the same terms and conditions, as specified in the relevant H-2A clearance orders and the regulations governing the H-2A program, specifically including the requirement that Cantu reimburse Plaintiffs for certain pre-employment expenses, *see* 20 C.F.R. § 655.122(h)(1); Compl. Exs. A–E; and

f) Plaintiffs and all Group Members were subjected to the same type of FLSA minimum wage violations, which occurred as a result of Cantu's common, uniform policy of failing to reimburse or advance Plaintiffs and all Group Members their pre-employment expenses as required by law.

### D. Cantu's Failure to Post Required Notice

5.25 During each season from 2017 to 2021, Cantu failed to post and keep posted a notice explaining the Fair Labor Standards Act, as prescribed by the DOL Wage and Hour Division ("DOL WHD"), in any conspicuous place in any establishment where Cantu employed Plaintiffs and Group Members, as required by 29 C.F.R. § 516.4.

5.26 Plaintiffs did not have actual notice of their pertinent rights under the Fair Labor Standards Act until they consulted with an attorney in or around August or September 2021.

5.27 Upon information and belief, Group Members who have not yet consulted with an attorney or joined this action do not have actual notice of their pertinent rights under the Fair Labor Standards Act.

5.28 During each season from 2017 to 2021, Cantu failed to post and maintain in a conspicuous location at any of Plaintiffs' places of employment a poster provided by the Secretary of Labor, which sets out the rights and protections for H-2A workers, as required by 20 C.F.R. § 655.135(l).

5.29 Plaintiffs did not have actual notice of their pertinent rights under the H-2A program and their contracts of employment with Cantu until they consulted with an attorney in or around August or September 2021.

E.    **Pre-Employment Expenses and First Workweek**

5.30      In 2017, the 2017 Plaintiffs and Group Members left their homes in Mexico and traveled to the United States to work for Cantu.

5.31      While in route to the United States in 2017, each of the 2017 Plaintiffs and Group Members incurred some or all of the following reasonable costs:

a)      Transportation via taxi, bus, and/or other means;

b)      Daily subsistence (i.e., meals);

c)      Lodging; and

d)      Visa and border-crossing expenses, including, but not limited to, fees for the H-2A visa itself and fees for the visa photograph.

5.32      Cantu did not reimburse the 2017 Plaintiffs or Group Members for their reasonable costs incurred, nor did Cantu advance such costs to the 2017 Plaintiffs or Group Members.

5.33      In 2017, the reasonable pre-employment costs incurred varied per individual, but amounted to at least $250, and up to approximately $400, each.

5.34      During their respective first workweeks in 2017, the 2017 Plaintiffs and Group Members worked less than they ordinarily did during the season and were paid less than usual as well. During this week, part of the workers' time was spent organizing themselves into work units of six to eight workers, called *cuadrillas*. Upon information and belief, no 2017 Plaintiff or Group Member was paid more than $400 during their first workweek.

5.35      When the amount expended on pre-employment expenses in 2017 by each 2017 Plaintiff and Group Member is subtracted from their respective earnings during their

first workweek of employment with Cantu in 2017, each 2017 Plaintiff and Group Member's wages for that first workweek are reduced to a rate that is less than the federal minimum wage of $7.25 per hour.

5.36     In 2018, the 2018 Plaintiffs and Group Members left their homes in Mexico and traveled to the United States to work for Cantu.

5.37     While in route to the United States in 2018, each of the 2018 Plaintiffs and Group Members incurred some or all of the following reasonable costs:

        a)     Transportation via taxi, bus, and/or other means;

        b)     Daily subsistence (i.e., meals);

        c)     Lodging; and

        d)     Visa and border-crossing expenses, including, but not limited to, fees for the H-2A visa itself and fees for the visa photograph.

5.38     Cantu did not reimburse the 2018 Plaintiffs or Group Members for their reasonable costs incurred, nor did Cantu advance such costs to the 2018 Plaintiffs or Group Members.

5.39     In 2018, the reasonable pre-employment costs incurred varied per individual, but amounted to at least $250, and up to approximately $400, each.

5.40     During their respective first workweeks in 2018, the 2018 Plaintiffs and Group Members worked less than they ordinarily did during the season and were paid less than usual as well. During this week, part of the workers' time was spent organizing themselves into work units of six to eight workers, called *cuadrillas*. Upon information and belief, no 2018 Plaintiff or Group Member was paid more than $400 during their first workweek.

5.41     When the amount expended on pre-employment expenses in 2018 by each 2018 Plaintiff and Group Member is subtracted from their respective earnings during their first workweek of employment with Cantu in 2018, each 2018 Plaintiff and Group Member's wages for that first workweek are reduced to a rate that is less than the federal minimum wage of $7.25 per hour.

5.42     In 2019, the 2019 Plaintiffs and Group Members left their homes in Mexico and traveled to the United States to work for Cantu.

5.43     While in route to the United States in 2019, each of the 2019 Plaintiffs and Group Members incurred some or all of the following reasonable costs:

    a)     Transportation via taxi, bus, and/or other means;

    b)     Daily subsistence (i.e., meals);

    c)     Lodging; and

    d)     Visa and border-crossing expenses, including, but not limited to, fees for the H-2A visa itself and fees for the visa photograph.

5.44     Cantu did not reimburse the 2019 Plaintiffs or Group Members for their reasonable costs incurred, nor did Cantu advance such costs to the 2019 Plaintiffs or Group Members.

5.45     In 2019, the reasonable pre-employment costs incurred varied per individual, but amounted to at least $250, and up to approximately $400, each.

5.46     During their respective first workweeks in 2019, the 2019 Plaintiffs and Group Members worked less than they ordinarily did during the season and were paid less than usual as well. During this week, part of the workers' time was spent organizing themselves into work units of six to eight workers, called *cuadrillas*. Upon information and

belief, no 2019 Plaintiff or Group Member was paid more than $400 during their first workweek.

5.47    When the amount expended on pre-employment expenses in 2019 by each 2019 Plaintiff and Group Member is subtracted from their respective earnings during their first workweek of employment with Cantu in 2019, each 2019 Plaintiff and Group Member's wages for that first workweek are reduced to a rate that is less than the federal minimum wage of $7.25 per hour.

5.48    In 2020, the 2020 Plaintiffs and Group Members left their homes in Mexico and traveled to the United States to work for Cantu.

5.49    While in route to the United States in 2020, each of the 2020 Plaintiffs and Group Members incurred some or all of the following reasonable costs:

    a)    Transportation via taxi, bus, and/or other means;

    b)    Daily subsistence (i.e., meals);

    c)    Lodging; and

    d)    Visa and border-crossing expenses, including, but not limited to, fees for the H-2A visa itself and fees for the visa photograph.

5.50    Cantu did not reimburse the 2020 Plaintiffs or Group Members for their reasonable costs incurred, nor did Cantu advance such costs to the 2020 Plaintiffs or Group Members.

5.51    In 2020, the reasonable pre-employment costs incurred varied per individual, but amounted to at least $250, and up to approximately $400, each.

5.52    During their respective first workweeks in 2020, the 2020 Plaintiffs and Group Members worked less than they ordinarily did during the season and were paid less

than usual as well. During this week, part of the workers' time was spent organizing themselves into work units of six to eight workers, called *cuadrillas*. Upon information and belief, no 2020 Plaintiff or Group Member was paid more than $400 during their first workweek.

5.53    When the amount expended on pre-employment expenses in 2020 by each 2020 Plaintiff and Group Member is subtracted from their respective earnings during their first workweek of employment with Cantu in 2020, each 2020 Plaintiff and Group Member's wages for that first workweek are reduced to a rate that is less than the federal minimum wage of $7.25 per hour.

5.54    In 2021, the 2021 Plaintiffs and Group Members left their homes in Mexico and traveled to the United States to work for Cantu.

5.55    While in route to the United States in 2021, each of the 2021 Plaintiffs and Group Members incurred some or all of the following reasonable costs:

    a)    Transportation via taxi, bus, and/or other means;

    b)    Daily subsistence (i.e., meals);

    c)    Lodging; and

    d)    Visa and border-crossing expenses, including, but not limited to, fees for the H-2A visa itself and fees for the visa photograph.

5.56    Cantu did not reimburse the 2021 Plaintiffs or Group Members for their reasonable costs incurred, nor did Cantu advance such costs to the 2021 Plaintiffs.

5.57    In 2021, the reasonable pre-employment costs incurred varied per individual, but amounted to at least $250, and up to approximately $400, each.

5.58     During their respective first workweeks in 2021, the 2021 Plaintiffs and Group Members worked less than they ordinarily did during the season and were paid less than usual as well. During this week, part of the workers' time was spent organizing themselves into work units of six to eight workers, called *cuadrillas*. Upon information and belief, no 2021 Plaintiff or Group Member was paid more than $400 during their first workweek.

5.59     When the amount expended on pre-employment expenses in 2021 by each 2021 Plaintiff and Group Member is subtracted from their respective earnings during their first workweek of employment with Cantu in 2021, each 2021 Plaintiff and Group Member's wages for that first workweek are reduced to a rate that is less than the federal minimum wage of $7.25 per hour.

**F.     Plaintiffs' Hours and Pay**

5.60     In each season from 2017 to 2021, all Plaintiffs harvested watermelons and pumpkins as their primary job duties. Plaintiffs and their co-workers were organized into work units called *cuadrillas*. Each *cuadrilla* of six to eight individuals worked together to harvest fruit and load it into a truck. The fruit in the truck was weighed, and each member of the *cuadrilla* was paid a piece-rate wage, which was purportedly determined by the weight of the fruit in the truck.

5.61     In 2017, the 2017 Plaintiffs worked for Cantu from approximately June 2017 through approximately October 2017.

5.62     In 2017, the 2017 Plaintiffs regularly worked for Cantu seven days per week, with only an occasional day off.

5.63     In 2017, the 2017 Plaintiffs worked for at least, approximately, eight to ten hours per day, on average.

5.64     In 2017, the 2017 Plaintiffs' hours of work varied, depending on factors such as the weather and the amount of fruit ready for harvest in a given location at a given time. The 2017 Plaintiffs sometimes worked more than ten hours in a day.

5.65     In 2017, Cantu paid the 2017 Plaintiffs on a piece-rate basis, which Cantu purported was based on the amount of produce that they harvested.

5.66     In 2017, Plaintiffs wages varied week over week depending upon factors such as the amount of work available. Cantu paid each 2017 Plaintiff, on average, $500 per week.

5.67     In 2017, the 2017 Plaintiffs' individual weekly earnings regularly totaled less than the applicable AEWR of $11.59 per hour. On such occasions, Cantu was required to supplement the 2017 Plaintiffs' individual piece-rate earnings so that they at least equaled the AEWR. 20 C.F.R. § 655.122(l)(2).

5.68     In 2017, Cantu failed to supplement the 2017 Plaintiffs' individual earnings to ensure that these weekly earnings equaled or exceeded the AEWR for each hour worked. As a result, the 2017 Plaintiffs were paid wages less than the applicable AEWR per hour for their work.

5.69     In 2017, Cantu failed to provide the 2017 Plaintiffs with an accurate statement showing each of the following: hours of work offered, hours actually worked, and piece-work units produced and weighed during each workweek.

5.70     In 2018, each of the 2018 Plaintiffs worked for Cantu from either approximately April 2018 or approximately June 2018 through approximately October 2018.

5.71     In 2018, the 2018 Plaintiffs regularly worked for Cantu seven days per week, with only an occasional day off.

5.72     In 2018, the 2018 Plaintiffs worked for at least, approximately, eight to ten hours per day, on average.

5.73     In 2018, the 2018 Plaintiffs' hours of work varied, depending on factors such as the weather and the amount of fruit ready for harvest in a given location at a given time. The 2018 Plaintiffs sometimes worked more than ten hours in a day.

5.74     In 2018, Cantu paid the 2018 Plaintiffs on a piece-rate basis, which Cantu purported was based on the amount of produce that they harvested.

5.75     In 2018, Plaintiffs wages varied week over week depending upon factors such as the amount of work available. Cantu paid each 2018 Plaintiff, on average, $500 per week.

5.76     In 2018, the 2018 Plaintiffs' individual weekly earnings regularly totaled less than the applicable AEWR of $11.87 per hour. On such occasions, Cantu was required to supplement the 2018 Plaintiffs' individual piece-rate earnings so that they at least equaled the AEWR. 20 C.F.R. § 655.122(l)(2).

5.77     In 2018, Cantu failed to supplement the 2018 Plaintiffs' individual earnings to ensure that these weekly earnings equaled or exceeded the AEWR for each hour worked. As a result, the 2018 Plaintiffs were paid wages less than the applicable AEWR per hour for their work.

5.78     In 2018, Cantu failed to provide the 2018 Plaintiffs with an accurate statement showing each of the following: hours of work offered, hours actually worked, and piece-work units produced and weighed during each workweek.

5.79     In 2019, each of the 2019 Plaintiffs worked for Cantu from either approximately April 2019 or approximately June 2019 through approximately October 2019.

5.80     In 2019, the 2019 Plaintiffs regularly worked for Cantu seven days per week, with only an occasional day off.

5.81     In 2019, the 2019 Plaintiffs worked for at least, approximately, eight to ten hours per day, on average.

5.82     In 2019, the 2019 Plaintiffs' hours of work varied, depending on factors such as the weather and the amount of fruit ready for harvest in a given location at a given time. The 2019 Plaintiffs sometimes worked more than ten hours in a day.

5.83     In 2019, Cantu paid the 2019 Plaintiffs on a piece-rate basis, which Cantu purported was based on the amount of produce that they harvested.

5.84     In 2019, Plaintiffs wages varied week over week depending upon factors such as the amount of work available. Cantu paid each 2019 Plaintiff, on average, $500 per week.

5.85     In 2019, the 2019 Plaintiffs' individual weekly earnings regularly totaled less than the applicable AEWR of $12.23 per hour. On such occasions, Cantu was required to supplement the 2019 Plaintiffs' individual piece-rate earnings so that they at least equaled the AEWR. 20 C.F.R. § 655.122(l)(2).

5.86    In 2019, Cantu failed to supplement the 2019 Plaintiffs' individual earnings to ensure that these weekly earnings equaled or exceeded the AEWR for each hour worked. As a result, the 2019 Plaintiffs were paid wages less than the applicable AEWR per hour for their work.

5.87    In 2019, Cantu failed to provide the 2019 Plaintiffs with an accurate statement showing each of the following: hours of work offered, hours actually worked, and piece-work units produced and weighed during each workweek.

5.88    In 2020, each of the 2020 Plaintiffs began to work for Cantu in either approximately April 2020 or approximately July 2020.

    a)    Plaintiffs Saul Estevez Pacheco, Arnulfo Bello Galindo, and Isabel Gonzalez Gonzalez became ill with what they each believed to be COVID-19 and returned to Mexico in approximately June 2020, after working since April 2020.

    b)    All of the other 2020 Plaintiffs worked through approximately October 2020.

5.89    In 2020, the 2020 Plaintiffs regularly worked for Cantu seven days per week, with only an occasional day off.

5.90    In 2020, the 2020 Plaintiffs worked for at least, approximately, eight to ten hours per day, on average.

5.91    In 2020, the 2020 Plaintiffs' hours of work varied, depending on factors such as the weather and the amount of fruit ready for harvest in a given location at a given time. The 2020 Plaintiffs sometimes worked more than ten hours in a day.

5.92     In 2020, Cantu paid the 2020 Plaintiffs on a piece-rate basis, which Cantu purported was based on the amount of produce that they harvested.

5.93     In 2020, Plaintiffs wages varied week over week depending upon factors such as the amount of work available. Cantu paid each 2020 Plaintiff, on average, $500 per week.

5.94     In 2020, the 2020 Plaintiffs' individual weekly earnings regularly totaled less than the applicable AEWR of $12.67 per hour. On such occasions, Cantu was required to supplement the 2020 Plaintiffs' individual piece-rate earnings so that they at least equaled the AEWR. 20 C.F.R. § 655.122(l)(2).

5.95     In 2020, Cantu failed to supplement the 2020 Plaintiffs' individual earnings to ensure that these weekly earnings equaled or exceeded the AEWR for each hour worked. As a result, the 2020 Plaintiffs were paid wages less than the applicable AEWR per hour for their work.

5.96     In 2020, Cantu failed to provide the 2020 Plaintiffs with an accurate statement showing each of the following: hours of work offered, hours actually worked, and piece-work units produced and weighed during each workweek.

5.97     In 2021, each of the 2021 Plaintiffs began work for Cantu in either approximately March 2021, approximately April 2021 or approximately July 2021.

> a)     Plaintiffs Arnulfo Bello Galindo, Fernando del Angel Azuara, Zenon del Angel Guerrero, and Saul Estevez Pacheco's last days of work for Cantu were in September 2021.
>
> b)     Plaintiff Isabel Gonzalez Gonzalez's last day of work for Cantu was on or about October 3, 2021.

c)      All of the other 2021 Plaintiffs are presently employed by Cantu as of the filing of this Complaint.

5.98      In 2021, the 2021 Plaintiffs regularly worked for Cantu seven days per week, with only an occasional day off.

5.99      In 2021, the 2021 Plaintiffs worked for at least, approximately, eight to ten hours per day, on average.

5.100      In 2021, the 2021 Plaintiffs' hours of work varied, depending on factors such as the weather and the amount of fruit ready for harvest in a given location at a given time. The 2021 Plaintiffs sometimes worked more than ten hours in a day.

5.101      In 2021, Cantu paid the 2021 Plaintiffs on a piece-rate basis, which Cantu purported was based on the amount of produce that they harvested.

5.102      In 2021, Plaintiffs wages varied week over week depending upon factors such as the amount of work available. Cantu paid each 2021 Plaintiff, on average, $500 per week.

5.103      In 2021, the 2021 Plaintiffs' individual weekly earnings regularly totaled less than the applicable AEWR of $13.03 per hour. On such occasions, Cantu was required to supplement the 2021 Plaintiffs' individual piece-rate earnings so that they at least equaled the AEWR. 20 C.F.R. § 655.122(l)(2).

5.104      In 2021, Cantu failed to supplement the 2021 Plaintiffs' individual earnings to ensure that these weekly earnings equaled or exceeded the AEWR for each hour worked. As a result, the 2021 Plaintiffs were paid wages less than the applicable AEWR per hour for their work.

5.105    In 2021, Cantu failed to provide the 2021 Plaintiffs with an accurate statement showing each of the following: hours of work offered, hours actually worked, and piece-work units produced and weighed during each workweek.

5.106    For the 2021 Plaintiffs who are still working for Cantu as of the filing of this Complaint, the violations described for the 2021 season are ongoing.

**G.    Cantu's Willful Violations of Federal Law**

5.107    Cantu was aware of his legal obligations toward Plaintiffs and Group Members, including, but not limited to, his obligation to reimburse Plaintiffs and Group Members for their pre-employment expenses, and his obligation to pay Plaintiffs and Group Members at least the federally-mandated minimum wage of $7.25 per hour.

5.108    Cantu acted intentionally or with reckless disregard when he failed to reimburse Plaintiffs and Group Members for their pre-employment expenses and failed to ensure that he compensated Plaintiffs and Group Members at or above the minimum wage. Facts indicating Cantu's intent or reckless disregard include:

   a)    Cantu has participated as an employer or employer's agent in the H-2A program for many years, since 2004 or earlier;

   b)    Cantu and entities affiliated with or managed by Cantu have been the subjects of multiple DOL WHD investigations;

   c)    Cantu and entities affiliated with or managed by Cantu have been assessed civil monetary penalties for violations of labor and employment laws by the DOL WHD, including in 2004, 2007, 2009, and 2016;

    d)      Cantu has failed to maintain complete and accurate payroll records; and

    e)      Cantu and his agents directly supervised Plaintiffs and Group Members' work and were aware of the number of hours per week that Plaintiffs and Group Members worked.

## H.    Plaintiffs' Job Duties

5.109    During each season from 2017–2021, Plaintiffs performed hourly, low-skill, non-supervisory, non-managerial work.

5.110    During each season from 2017–2021, Plaintiffs' principal duties have included planting, harvesting, loading, packaging, and transporting agricultural produce, primarily watermelons and/or pumpkins.

## I.    Plaintiffs' Itinerary and Housing Conditions

5.111    During each season from 2017–2021, Plaintiffs and similarly situated workers worked for Cantu at multiple job sites throughout the State of Texas, according to the labor needs of the growers with whom Cantu contracted.

5.112    Ordinarily, Plaintiffs and similarly situated workers worked for Cantu at job sites in or around Edinburg, Texas; Dilley, Texas; Comanche, Texas; Midland, Texas; and/or Plains, Texas.

5.113    During each season from 2017–2021, Cantu provided Plaintiffs with housing.

5.114    Throughout each relevant year, Cantu and his agents transported Plaintiffs between and among Plaintiffs' worksites and housing locations.

5.115    In 2021, while the 2021 Plaintiffs worked in the area of Edinburg, Cantu placed some Plaintiffs in housing on Tower Road. In the housing unit provided to Plaintiff Fernando del Angel Azuara, substandard conditions included:

       a)    When it rained, water leaked through the roof; and

       b)    There was no air conditioning provided, despite the intense summer heat.

5.116    While working in the vicinity of Plains, Texas, a group of workers, including all named Plaintiffs, were provided housing by Cantu in a large, horseshoe-shaped, barracks-style building (the "Barracks") located at the intersection of Avenue B and 12th Street in Plains, Yoakum County, Texas 79355 (the "Plains Labor Camp").

5.117    The Plains Labor Camp sits on a lot that extends from Avenue B in the West to Avenue C in the East, and from 12th Street in the North to 13th Street in the South.

5.118    Said lot, comprising an entire square neighborhood block, is owned by Cantu.

5.119    In addition to the Barracks, several other structures—including RV trailers and mobile homes—are located on the same lot as the Plains Labor Camp.

5.120    Cantu failed to disclose to DOL that he intended to house workers in any of the buildings or vehicles in the Plains Labor Camp other than the Barracks. Cantu nevertheless housed workers in various buildings and vehicles in the Plains Labor Camp.

5.121    The housing conditions at the Plains Labor Camp were dangerous and decrepit. *See* Ex. F (Photographs of Plains Labor Camp taken in August 2021).

5.122    The unsafe and unsanitary conditions to which Plaintiffs were subjected include, but are not limited to, the following:

a)      Large portions of the exterior siding of the Barracks were missing, exposing Plaintiffs to the elements;

b)      The missing exterior siding also exposed pipes, electrical wiring, and insulation;

c)      When Plaintiffs arrived, the interior of the Barracks was filthy, with surfaces covered in dirt, dust, and grime;

d)      During the height of the Texas summer, it was sweltering hot inside the Barracks, necessitating Plaintiffs and their co-workers to purchase fans with their own money;

e)      There were pools of standing water in depressions formed by the unlevel ground throughout the Plains Labor Camp;

f)      Windows on the Barracks were broken;

g)      Shutters on the Barracks' windows were broken;

h)      Windows and doors on the Barracks were not screened;

i)      Rusted, broken furniture and appliances were littered about the premises;

j)      The fence surrounding the Plains Labor Camp was broken and partially collapsed;

k)      There were inadequate trash receptacles and/or trash was removed from the premises with insufficient regularity to maintain a sanitary environment;

l)      There were many flies and mosquitos on the premises, because of the garbage and/or standing water;

m)     There were no fire extinguishers on the premises; and

n)     There were no first aid kits on the premises.

5.123     Upon information and belief, other workers housed by Cantu in various of the buildings and vehicles in the Plains Labor Camp did not have access to running water.

5.124     In late August 2021, the DOL WHD ordered Cantu to move all of the occupants of the Barracks to other housing.

5.125     On or about Sunday, August 29, 2021, Cantu transported a large group of workers—including all of the named Plaintiffs except for Plaintiff Isabel Gonzalez Gonzalez—by bus from the Plains Labor Camp to a migrant farmworker camp operating out of a building with a sign stating, "Economy Inn," located at 1310 West Main St., Brownfield, Texas 79316 (the "Economy Inn").

5.126     Upon information and belief, Cantu had a contractual agreement with the owners or operators of the Economy Inn, pursuant to which Cantu agreed to pay the Economy Inn's owners or operators in exchange for the provision of rooms in which Cantu housed Plaintiffs and their coworkers.

5.127     Cantu placed a group of eight workers, including Plaintiffs Saul Estevez Pacheco, Arnulfo Bello Galindo, Jose Osvaldo Sanchez Calderon, and Ezequiel Vazquez Ortega, in Room 121 of the Economy Inn.

5.128     Thus, eight adult men were made to live, cook, eat, sleep, and use the restroom in Room 121 of the Economy Inn.

5.129     Room 121 contained only four beds.

5.130     Thus, the occupants of Room 121 were forced to either share a bed with one of their coworkers or sleep on the floor.

5.131    Cantu did not provide Plaintiffs or their co-workers with three prepared meals per day. Therefore, Cantu was obligated to provide cooking facilities to Plaintiffs and their co-workers, in compliance with the applicable regulations. 20 C.F.R. § 655.122(g).

5.132    There was a small kitchen area in Room 121, with one stove, one refrigerator, one table, and three chairs.

5.133    Cantu provided no central kitchen facilities, separate from their employees' living quarters, at the Economy Inn. Instead, Cantu relied on the limited kitchenette in Room 121, which the occupants of Room 121 and their co-workers used to cook and eat in that confined space.

5.134    Many of the workers who lived in other rooms at the Economy Inn, including Plaintiffs Fernando del Angel Azura and Zenon del Angel Guerrero, did not have cooking and eating facilities in their own rooms.

5.135    In addition to the occupants of Room 121, those workers employed by Cantu and housed in rooms at the Economy Inn who did not have cooking and eating facilities in their own rooms, used the cooking and eating facilities in Room 121.

5.136    In total, more than ten of Cantu's employees used the kitchen facilities, including the stove, in Room 121.

5.137    Room 121 contained one bathroom, with a toilet, a sink, and a shower.

5.138    The conditions in Room 121 were unsanitary and overcrowded.

5.139    Upon information and belief, Room 121 contained less than 480 square feet of floor space for combined cooking, eating, and sleeping purposes. Thus, there was less

than 60 square feet of floor space for combined cooking, eating, and sleeping purposes, for each of Room 121's eight occupants.

5.140    Room 121 contained inadequate shelving for safe and healthy food storage. The lack of appropriate food storage also exacerbated the overcrowding.

5.141    Room 121 contained inadequate facilities for hanging clothing and storing personal effects. This further exacerbated the overcrowding.

5.142    There was only one exterior door into and out of Room 121.

5.143    Said exterior door was not screened.

5.144    Cantu placed four workers, including Plaintiffs Fernando del Angel Azuara and Zenon del Angel Guerrero, in Room 102 of the Economy Inn.

5.145    Room 102 contained only two beds.

5.146    Plaintiffs Fernando del Angel Azuara and Zenon del Angel Guerrero were thus forced to share a bed with one another.

5.147    Plaintiff Fernando del Angel Azuara is Plaintiff Zenon del Angel Guerrero's son. Plaintiff Fernando del Angel Azuara is neither a minor child nor the dependent of Plaintiff Zenon del Angel Guerrero. Thus, the two are not considered "family" under the applicable regulations and are each entitled to be provided with their own separate bed. *See* 20 C.F.R. § 654.416(e); 20 C.F.R. § 675.300.

5.148    The 2021 Plaintiffs were subjected to the unsanitary, overcrowded conditions described in this section during the COVID-19 pandemic, significantly exacerbating the danger of such conditions.

**J.    Post-Employment Expenses**

5.149    Each of the 2017 Plaintiffs completed the work contract period as required by Cantu.

5.150    At the end of their seasonal employment with Cantu in 2017, the 2017 Plaintiffs incurred some or all of the following reasonable costs while traveling to their homes in Mexico:

       a)    Transportation via taxi, bus, and/or other means; and

       b)    Daily subsistence (i.e., meals).

5.151    In 2017, the reasonable post-employment costs incurred varied per individual, but amounted to approximately $100 to $300 each.

5.152    Cantu did not reimburse the 2017 Plaintiffs for their reasonable costs incurred, nor did Cantu advance such costs to the 2017 Plaintiffs.

5.153    In October 2018, just prior to the end of the work contract period, the 2018 Plaintiffs left and returned to their homes in Mexico several days early, because there was very little work provided—less than promised under the terms of the clearance order.

5.154    At the end of their seasonal employment with Cantu in 2018, the 2018 Plaintiffs incurred some or all of the following reasonable costs while traveling to their homes in Mexico:

       a)    Transportation via taxi, bus, and/or other means; and

       b)    Daily subsistence (i.e., meals).

5.155    In 2018, the reasonable post-employment costs incurred varied per individual, but amounted to approximately $100 to $300 each.

5.156    Cantu did not reimburse the 2018 Plaintiffs for their reasonable costs incurred, nor did Cantu advance such costs to the 2018 Plaintiffs.

5.157    Each of the 2019 Plaintiffs completed the work contract period as required by Cantu.

5.158    At the end of their seasonal employment with Cantu in 2019, the 2019 Plaintiffs incurred some or all of the following reasonable costs while traveling to their homes in Mexico:

        a)    Transportation via taxi, bus, and/or other means; and

        b)    Daily subsistence (i.e., meals).

5.159    In 2019, the reasonable post-employment costs incurred varied per individual, but amounted to approximately $100 to $300 each.

5.160    Cantu paid approximately $20 to each of the 2019 Plaintiffs at the end of the contract period, before they departed the United States. This amount did not fully cover the reasonable post-employment costs incurred by the 2019 Plaintiffs, and Cantu did not subsequently reimburse the 2019 Plaintiffs for those costs.

5.161    The following 2020 Plaintiffs completed the work contract period as required by Cantu: Fernando del Angel Azuara, Zenon del Angel Guerrero, Jose Osvaldo Sanchez Calderon, and Ezequiel Vazquez Ortega.

5.162    The following 2020 Plaintiffs were forced to leave before the end of the contract period when they contracted what they believe to be COVID-19 and returned home to Mexico in or around June 2020: Arnulfo Bello Galindo, Saul Estevez Pacheco, and Isabel Gonzalez Gonzalez.

5.163    At the end of their seasonal employment with Cantu in 2020, the 2020 Plaintiffs incurred some or all of the following reasonable costs while traveling to their homes in Mexico:

a)     Transportation via taxi, bus, and/or other means; and

b)     Daily subsistence (i.e., meals).

5.164     In 2020, the reasonable post-employment costs incurred varied per individual, but amounted to approximately $100 to $300 each.

5.165     Cantu did not reimburse the 2020 Plaintiffs for their reasonable costs incurred, nor did Cantu advance such costs to the 2020 Plaintiffs.

## K.    Cantu's Capacity

5.166     From 2017 to the present, Cantu has maintained a sole proprietorship, doing business as Cantu Harvesting. All actions taken by Cantu as alleged in this Complaint were taken in his capacity as a sole proprietor, doing business as Cantu Harvesting.

5.167     Cantu was the manager of Cantu's Harvesting, LLC, a Texas limited liability company. Cantu's Harvesting, LLC had its charter forfeited for failure to pay taxes on January 27, 2017, and has not subsequently had its charter reinstated. Thus, to the extent that Cantu purported to take any actions in his capacity as manager of Cantu's Harvesting, LLC, after January 27, 2017, Cantu, in fact, took said actions in his individual capacity and/or in his capacity as a sole proprietorship, doing business as Cantu Harvesting.

## VI.    CAUSES OF ACTION

### (1) FIRST CAUSE OF ACTION: FAIR LABOR STANDARDS ACT
### FAILURE TO PAY MINIMUM WAGE
### (ALL INDIVIDUAL PLAINTIFFS AGAINST CANTU)

6.1     Plaintiffs adopt and incorporate by reference each preceding paragraph as if fully set forth herein.

6.2     The above-described actions by Cantu violated Plaintiffs' minimum wage rights under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

6.3      The violations of the FLSA minimum wage requirement set forth in this claim resulted from Cantu's failure to advance or reimburse Plaintiffs for the pre-employment expenses described in Section V(E), *supra*, amounting to unlawful de facto deductions from Plaintiffs' first workweek's wages each season. *See generally Arriaga v. Florida-Pacific Farms, LLC*, 305 F.3d 1228 (11th Cir. 2002); 29 U.S.C. § 203(m).

6.4      Cantu's violations of the FLSA, as specified above, were willful.

6.5      The named Plaintiffs have consented in writing to be party plaintiffs in this FLSA collective action. Copies of their written consents are attached to this Complaint. *See* Compl., Exs. G–M.

6.6      As a direct consequence of Cantu's violations of Plaintiffs' rights under the FLSA, Plaintiffs are entitled to their actual unpaid minimum wages, plus an equal amount in liquidated damages, attorneys' fees, and costs, pursuant to 29 U.S.C. § 216(b).

### (2) SECOND CAUSE OF ACTION: FAIR LABOR STANDARDS ACT FAILURE TO PAY MINIMUM WAGE (ALL GROUP MEMBERS AGAINST CANTU)

6.7      Plaintiffs adopt and incorporate by reference each preceding paragraph as if fully set forth herein.

6.8      The above-described actions by Cantu violated the Group Members' minimum wage rights under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

6.9      The violations of the FLSA minimum wage requirement set forth in this claim resulted from Cantu's failure to advance or reimburse Group Members for the pre-employment expenses described in Section V(E), *supra*, amounting to unlawful de facto deductions from the Group Members' first workweek's wages each season. *See generally*

*Arriaga v. Florida-Pacific Farms, LLC*, 305 F.3d 1228 (11th Cir. 2002); 29 U.S.C. § 203(m).

6.10    Cantu's violations of the FLSA, as specified above, were willful.

6.11    As a direct consequence of Cantu's violations of the Group Members' rights under the FLSA, the Group Members are entitled to their actual unpaid minimum wages, plus an equal amount in liquidated damages, attorneys' fees, and costs, pursuant to 29 U.S.C. § 216(b).

### (3) THIRD CAUSE OF ACTION: BREACH OF CONTRACT (ALL INDIVIDUAL PLAINTIFFS AGAINST CANTU)

6.12    Plaintiffs adopt and incorporate by reference each preceding paragraph as if fully set forth herein.

6.13    In each season from 2017 through 2021, Cantu was Plaintiffs' "employer" within the meaning of the H-2A regulations, 20 C.F.R. § 655.103(b).

6.14    In each season from 2017 through 2021, Plaintiffs were employed pursuant to H-2A Agricultural Clearance Orders, which Cantu filed with the DOL. *See, e.g.*, Compl. Exs. A–E.

6.15    In each season from 2017 through 2021, the respective Clearance Orders, together with the minimum terms specified in 20 C.F.R. § 655.122 and 20 C.F.R. § 655.135, constituted valid employment contracts containing all material terms of Plaintiffs' employment with Cantu. 20 C.F.R. § 655.122(q).

6.16    During each season from 2017 to 2021, Plaintiffs performed all material contractual obligations of employment that they were called upon to perform under the terms of their employment contracts.

6.17     In 2017, Cantu failed to perform his obligations under the employment contracts with each 2017 Plaintiff. Cantu materially breached the contractual obligations he owed to each 2017 Plaintiff by:

    a)    failing to pay the 2017 Plaintiffs at least the AEWR of $11.59 per hour, as required by 20 C.F.R. §§ 655.120, 655.122(l) and 81 Fed. Reg. 94422 (Dec. 23, 2016);

    b)    failing to advance or reimburse the 2017 Plaintiffs for their pre-employment expenses, as required by 20 C.F.R. § 655.122(h)(1);

    c)    failing to advance or reimburse the 2017 Plaintiffs for their post-employment expenses, as required by 20 C.F.R. §655.122(h)(2);

    d)    failing to keep accurate and adequate records with respect to the 2017 Plaintiffs' earnings, the daily starting and stopping times for work, and deductions from wages, as required by 20 C.F.R. § 655.122(j);

    e)    failing to furnish the 2017 Plaintiffs with hours and earnings statements, as required by 20 C.F.R. § 655.122(k); and

    f)    failing to post and maintain a poster setting out the rights and protections for H-2A workers, as required by 20 C.F.R. § 655.135(l).

6.18     In 2018, Cantu failed to perform his obligations under the employment contracts with each 2018 Plaintiff. Cantu materially breached the contractual obligations he owed to each 2018 Plaintiff by:

a)       failing to pay the 2018 Plaintiffs at least the AEWR of $11.87 per hour, as required by 20 C.F.R. §§ 655.120, 655.122(l) and 82 Fed. Reg. 60628 (Dec. 21, 2017);

b)       failing to advance or reimburse the 2018 Plaintiffs for their pre-employment expenses, as required by 20 C.F.R. § 655.122(h)(1);

c)       failing to advance or reimburse the 2018 Plaintiffs for their post-employment expenses, as required by 20 C.F.R. §655.122(h)(2);

d)       failing to keep accurate and adequate records with respect to the 2018 Plaintiffs' earnings, the daily starting and stopping times for work, and deductions from wages, as required by 20 C.F.R. § 655.122(j);

e)       failing to furnish the 2018 Plaintiffs with hours and earnings statements, as required by 20 C.F.R. § 655.122(k); and

f)       failing to post and maintain a poster setting out the rights and protections for H-2A workers, as required by 20 C.F.R. § 655.135(l).

6.19       In 2019, Cantu failed to perform his obligations under the employment contracts with each 2019 Plaintiff. Cantu materially breached the contractual obligations he owed to each 2019 Plaintiff by:

a)       failing to pay the 2019 Plaintiffs at least the AEWR of $12.23 per hour, as required by 20 C.F.R. §§ 655.120, 655.122(l) and 83 Fed. Reg. 66306 (Dec. 26, 2018);

b)       failing to advance or reimburse the 2019 Plaintiffs for their pre-employment expenses, as required by 20 C.F.R. § 655.122(h)(1);

c)      failing to fully advance or reimburse the 2019 Plaintiffs for their post-employment expenses, as required by 20 C.F.R. §655.122(h)(2);

d)      failing to keep accurate and adequate records with respect to the 2019 Plaintiffs' earnings, the daily starting and stopping times for work, and deductions from wages, as required by 20 C.F.R. § 655.122(j);

e)      failing to furnish the 2019 Plaintiffs with hours and earnings statements, as required by 20 C.F.R. § 655.122(k); and

f)      failing to post and maintain a poster setting out the rights and protections for H-2A workers, as required by 20 C.F.R. § 655.135(l).

6.20      In 2020, Cantu failed to perform his obligations under the employment contracts with each 2020 Plaintiff. Cantu materially breached the contractual obligations he owed to each 2020 Plaintiff by:

a)      failing to pay the 2020 Plaintiffs at least the AEWR of $12.67 per hour, as required by 20 C.F.R. §§ 655.120, 655.122(l) and 84 Fed. Reg. 69774 (Dec. 19, 2019);

b)      failing to advance or reimburse the 2020 Plaintiffs for their pre-employment expenses, as required by 20 C.F.R. § 655.122(h)(1);

c)      failing to advance or reimburse the 2020 Plaintiffs for their post-employment expenses, as required by 20 C.F.R. §655.122(h)(2);

d)      failing to keep accurate and adequate records with respect to the 2020 Plaintiffs' earnings, the daily starting and stopping times for

work, and deductions from wages, as required by 20 C.F.R. § 655.122(j);

e)      failing to furnish the 2020 Plaintiffs with hours and earnings statements, as required by 20 C.F.R. § 655.122(k); and

f)      failing to post and maintain a poster setting out the rights and protections for H-2A workers, as required by 20 C.F.R. § 655.135(l).

6.21      In 2021, Cantu failed to perform his obligations under the employment contracts with each 2021 Plaintiff. Cantu materially breached the contractual obligations he owed to each 2021 Plaintiff by:

a)      failing to pay the 2021 Plaintiffs at least the AEWR of $13.03 per hour, as required by 20 C.F.R. §§ 655.120, 655.122(l) and 86 Fed. Reg. 10996 (Feb. 23, 2021);

b)      failing to advance or reimburse the 2021 Plaintiffs for their pre-employment expenses, as required by 20 C.F.R. § 655.122(h)(1);

c)      failing to keep accurate and adequate records with respect to the 2021 Plaintiffs' earnings, the daily starting and stopping times for work, and deductions from wages, as required by 20 C.F.R. § 655.122(j);

d)      failing to furnish the 2021 Plaintiffs with hours and earnings statements, as required by 20 C.F.R. § 655.122(k);

e)      failing to post and maintain a poster setting out the rights and protections for H-2A workers, as required by 20 C.F.R. § 655.135(l); and

f)      failing to provide the 2021 Plaintiffs with housing which meets the applicable health and safety standards, as required by 20 C.F.R. § 655.122(d).

6.22    As a direct consequence of Cantu's breaches of contract, Plaintiffs have suffered substantial injury, including unpaid wages, unreimbursed expenses, and the lost value of safe, sanitary, and otherwise adequate housing.

6.23    As a result of Cantu's unlawful conduct, Plaintiffs have also suffered emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, indignity, and other pecuniary and non-pecuniary loss.

6.24    The nature of the parties' contracts is such that Plaintiffs' emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, indignity, and other pecuniary and non-pecuniary loss is a natural and foreseeable result of Cantu's breaches.

6.25    Under Texas common law, Cantu is liable to Plaintiffs for compensatory damages incurred as a result of Cantu's breaches of contract.

6.26    Cantu is liable to Plaintiffs for all actual, incidental, reliance, expectation, consequential, and compensatory damages caused by Cantu's breach of contract, as well as Plaintiffs' reasonable attorneys' fees and costs pursuant to section 38.001 of the Texas Civil Practice and Remedies Code.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant them the following relief:

a)      Order issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated Group Members apprising them of the pendency

of this action and of their right to join this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

b)     Declare that Cantu violated the FLSA by failing to pay Plaintiffs and all who may join this suit their minimum wage as required by 29 U.S.C. § 206(a);

c)     Declare that Cantu breached his contracts with Plaintiffs;

d)     Award Plaintiffs, and all who may join this suit, their unpaid minimum wages and an equal amount of liquidated damages pursuant to 29 U.S.C. § 216(b);

e)     Award Plaintiffs actual, consequential, reliance, expectation, and incidental damages for breach of contract;

f)     Award Plaintiffs compensatory damages for emotional distress, emotional pain and suffering, mental anguish, loss of enjoyment of life, inconvenience, and injury to their dignity;

g)     Enter a permanent injunction, restraining Cantu from providing Plaintiffs with housing that does not meet the applicable health and safety standards;

h)     Award Plaintiffs and all who may join this suit their reasonable attorneys' fees and costs incurred in connection with Plaintiffs' FLSA claims, pursuant to 29 U.S.C. § 216(b);

i)     Award Plaintiffs reasonable attorneys' fees and costs incurred in connection with Plaintiffs' claims for breach of contract, pursuant to section 38.001(8) of the Texas Civil Practice and Remedies Code;

j)     Award Plaintiffs, and all who may join this suit, pre-judgment, and post-judgment interest, as allowed by law; and

k)     Award Plaintiffs, and all who may join this suit, all other relief as this Court deems just and proper.

Respectfully Submitted,

*/s/ Maxwell Dismukes*

Maxwell Dismukes
TEXAS RIOGRANDE LEGAL AID, INC.
1331 Texas Ave.
El Paso, TX 79901
(915) 585-5100
Fax: (915) 533-4108
Texas Bar No. 24116289
Email: mdismukes@trla.org

Daniela Dwyer
TEXAS RIOGRANDE LEGAL AID
301 South Texas Ave.
Mercedes, Texas 78570
(956) 447-2850
Fax: (956) 825-7035
Texas Bar No. 24040842
Email: ddwyer@trla.org

ATTORNEYS FOR PLAINTIFFS